**MICHIGAN TRANSIT CORPORATION v. BROWN, Deputy Com'r.**

No. 2278.

District Court, W. D. Michigan, S. D. Nov. 16, 1929.

Charles J. Dovel, of Manistee, Mich., for plaintiff.

L. H. Grettenberger, of Grand Rapids, Mich., and Howard L. Campbell, of Manistee, Mich., for defendant.

RAYMOND, District Judge.

This is a bill in equity brought by plaintiff to set aside an award made by defendant under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950).

Plaintiff, in substance, alleges that the award is not in accordance with law because not supported by competent evidence, the claim being that the fall resulting in the death of Albert Mielhke, the deceased employee, was caused by fainting spells, dizziness, and epileptic fits to which deceased had been subject. The further claim is made that no evidence was offered proving or tending to prove dependency upon the part of any of the persons in whose favor the award was made.

By reason of the provisions of section 21 (b) of the act, section 921 (b), 33 USCA, a compensation order may be suspended or set aside through injunction proceedings only if "not in accordance with law." The decided trend of decision under the Workmen's Compensation Acts of the various states has been toward a more restricted area of review tending toward the rule that it is only when the evidentiary facts are undisputed and no conflicting inference respecting the ultimate fact can be drawn therefrom, that the question becomes one of law.

Such logical deductions and inferences as may be and are, in fact, drawn by the Commissioner from the direct evidence must be taken as established facts and not within the scope of the power of the court to review. This has been recognized in cases thus far adjudicated under the act here in question. See Obrecht-Lynch Corporation et al. v. Clark (D. C.) 30 F.(2d) 144; Merchants' & Miners' Transp. Co. v. Norton et al. (D. C.) 32 F.(2d) 513; Joyce v. United States Deputy Commissioner (D. C.) 33 F.(2d) 218; Pocahontas Fuel Co. et al. v. Monahan et al. (D. C.) 34 F.(2d) 549.

■ The testimony taken before the Deputy Commissioner has been received in evidence in this case. It appears that on May 27, 1929, the employee, who was 25 years of age, was working as a painter on a scaffold 12 inches wide, 2 inches thick, and 14 feet long, the scaffold being suspended by ropes and hooks alongside the steamship Manitou about 20 or 25 feet above the surface of the navigable waters of Manistee Lake, and that he had painted an area of about 3 feet square when the fall occurred. There is competent evidence to the effect that he was frightened, and that as he was attempting to change his position on the scaffold he fell into the water where there were floating logs, spiles, and débris; that when his body was recovered a contusion was found upon his head. There was also evidence from which the Deputy Commissioner might have found that the fall was caused by an epileptic seizure. Had he so found, a much controverted question of law would have been presented. The finding of the Deputy Commissioner, however, was, in substance, that, while performing service for the employer upon navigable waters of the United States, the employee sustained personal injury resulting in death while working as a painter standing on staging built by the employer around the steamship Manitou then afloat in Manistee Harbor, when he fell into the water and was drowned, and that the evidence was insufficient to establish as a fact that the fall was caused by an epileptic attack or any other pathological condition. Under the rules above stated, the findings of fact of the Deputy Commissioner are binding upon this court and sufficient to warrant the conclusion that the death arose out of and in the course of employment, and that death resulted from an injury.

In the mass of confusion which has arisen from the attempt of courts to define the meaning of the phraseology commonly used in this class of legislation it is interesting to note that the definition given by the Massachusetts Supreme Court in the case of In re McNicol et al., 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, has been generally approved by courts as correctly stating the meaning of the words "arising out of and in the course of his employment." It is as follows: "It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Application of this definition to the facts as found by the Deputy Commissioner leaves no doubt in the mind of the court that the injury and death are within the statutory definitions found in section 2 of the act, section 902, 33 USCA.

■■ The proofs to sustain the findings of dependency are not so clear. The Deputy Commissioner held that the deceased, a single man, left surviving him his mother and four brothers, August Mielhke, Laverne Mielhke, Robert Mielhke and Jay Mielhke, all of whom were partially dependent upon him for support at the time of the death and were entitled to death benefits; 25 per cent. of his average wage to his mother and 15 per cent. to each of the brothers, not to exceed, however, 66⅔ per cent. of the average weekly earnings. The surviving father was held not to be a dependent. The Deputy Com-

missioner found the average annual earnings to be $900, and the average weekly wage, $17.31. It is argued that there is no evidence to the effect that any portion of Albert's earnings which were turned over to his mother was used for the support of his younger brothers or that they were in any sense dependent upon these contributions for support. The following testimony given by Esther Mielhke seems to furnish sufficient basis for the finding:

"Q. Well, you don't know what your mother did with the money that was turned in to her by your brother and your father, down there? A. Just kept up the family, is all I know.

"Q. She bought stuff she needed for the house, and bought the clothing that was needed for the smaller children, at any rate, and perhaps gave your brother money to buy his clothing, and bought her own clothing, and paid the bills that she ran, if she did run any? A. Yes, sir."

It appears that deceased was one of a family of nine, consisting of his father and mother, five brothers, and one sister. The father was earning $4 a day and was receiving a pension of $25 per month. The mother had an income stated by her to be about $5 per month from sewing. The sister Esther was working and paid $5 a week for her board while a brother Lewis, aged 19, was earning $18 per week, which he turned over to his mother. Another boy was earning $10 a week. It seems highly improbable that the earnings of the father and mother were sufficient to support the family, and it is a fair inference from the foregoing that the children who were unemployed were dependent to some extent for their support upon deceased. Dependency has been generally held not to mean absolute dependency for the necessities of life, but rather that applicant looked to and relied upon the contributions of the injured employee in whole or in part as a means of supporting and maintaining himself or herself in accordance with the accustomed mode of life. In any event, dependency is a question of fact, and there is in the record evidence from which the Deputy Commissioner could fairly deduce his findings relative to dependency.

A more serious difficulty arises from the objection that there is in the record no testimony that the four brothers in whose favor an award is made were under the age of 18 years. Careful reading of the record fails to reveal any evidence upon this subject. In the absence of such testimony the award for this class of dependents cannot be sustained. Compensation orders should contain full and complete findings of fact based upon competent testimony.

The order of the court will be that the award of the Deputy Commissioner for Mrs. August (Bertha) Mielhke as a dependent is affirmed and the injunction prayed for relative thereto is denied. The prayer of the bill of complaint will be granted so far as it relates to the four brothers named, without prejudice, however, to their right to apply for rehearing upon the claim for compensation filed with the United States Employees' Compensation Commission on or before July 2, 1929, for the purpose of taking further proofs, or to file a separate petition with said Commission setting forth their claim to compensation under the statute. No costs will be awarded.