**LUMBER MUT. CASUALTY INS. CO. OF NEW YORK et al. v. LOCKE, Deputy Com'r.**

No. 444.

Circuit Court of Appeals, Second Circuit.

July 11, 1932.

Dickinson S. Talley, of New York City, for plaintiffs-appellants.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit to restrain the defendant, as Deputy Commissioner of the United States Employees' Compensation Commission, appointed under the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950), from enforcing a compensation order in favor of one Truppi, a long-

shoreman, who suffered injuries in the course of his employment, and to set aside the order. The District Court dismissed the bill of complaint filed by the employer and the insurance company (termed by the statute the "carrier"), and from the decree of dismissal this appeal has been taken.

Truppi was employed by Transatlantic Terminal Company as a longshoreman. On October 3, 1927, while at work on one of its vessels signaling to the winchman, he tripped on a piece of iron and fell over the side of the vessel to the dock. He was taken to the hospital, where he remained six and one-half weeks, during which time he said that he had pain over the entire left side of his head, back, and kidneys. His brother took him home from the hospital, where, as he testified, he still suffered from pains in his head. Thereafter he was treated by the physician of the carrier, to whom he said he complained because of pains in his head, left arm, and the lower part of the back and because he could not open his jaw and could only take liquid foods. He testified that these symptoms continued until March 12, 1928, while he was under this physician's care, and also that they had continued up to April, 1930, when the formal hearing was had before the defendant Deputy Commissioner. It further appeared at the hearing that his memory was affected, that he often fell from attacks of dizziness and had to be helped about.

Truppi's expert, Dr. Fisk, said he had examined him a few weeks before the date of the hearing before the Deputy Commissioner; that he had found that Truppi had deafness in the left ear, pains in the head and right ear, that he did not swing his left arm as well as his right, and had difficulty in retracting his lower jaw, and had "post-concussion syndrome, plus functional neurotic element." He said that the complaints were referable to the accident, but that he believed if the case was settled a part of the condition would clear up, though he doubted whether the patient would ever be able to do longshore work again.

Dr. Shapiro, the physician of the carrier, who had seen Truppi in the hospital and had attended him up to March 12, 1928, testified that he believed that he had then recovered, that the complaints of headaches had disappeared, and that his only complaint was of inability to hear on his left side. He admitted, however, that Truppi could not open his jaw to a normal position, though he thought that he had really been able to work since a short time after he had been discharged.

Altman, another physician called by the carrier, said that Truppi was in Beth Israel Hospital for eighteen days in October, 1929, that the X-ray pictures showed no fracture, and the proper diagnosis was post-concussion neurosis. He thought Truppi could do regular work as time went on, but when he saw him the latter had no confidence in himself and was hard to get out of bed. The physician said that he did not then complain of dizziness, and that his condition would affect his ability to work so long as he did not try to overcome it.

Sheehan, another physician called as a witness by the carrier, examined Truppi in March, 1930. The latter was unable fully to open his jaws, was unsteady, and his hearing was impaired. Nothing of a serious nature appeared except the disability of the jaw and pain in the left shoulder and impairment of hearing. Sheehan thought that he had definite earning capacity and that his condition was neurotic.

The records of the Marine Hospital, where Truppi was placed after the accident, showed a diagnosis of fractured skull, fractured ribs on the left side, and fractured ear drum; a later diagnosis indicated that there was no evidence of any fracture of the ribs and no definite sign of a fracture of the skull.

Dr. Leiberson, an independent specialist in reading X-ray pictures, was called by the Deputy Commissioner, and in these pictures from the hospital found no evidence of a fracture of the skull. He, however, stated that a fracture at the base of the skull would not appear.

 The foregoing is the substance of the proofs taken at the hearing before the Deputy Commissioner upon Truppi's claim for compensation. There was a dispute as to the extent and permanency of his disability other perhaps than that of deafness, which was permanent, and also how far it might be due to malingering or to the neurotic condition so common after accidents which might after a time disappear. There was enough, however, to support the finding that Truppi was entitled to compensation as an employee having permanent partial disability without earning capacity, subject to reconsideration of the degree of the impairment either on the motion of the Deputy Commissioner or upon the application of any party in interest, as provided by section 8 (c) (21) of the act, 33 USCA § 908 (c) (21). He had only worked three weeks during a period of about two years and a half following his injury, and there was certainly ground for saying that

his condition was not only due to the accident, but was likely to continue indefinitely. It is true that there was a finding that physically the claimant was able to do light work, but that, owing to his mental condition, he had no earning capacity, and that he would "never make a full recovery or be able to engage in laborious work." Fol. 456. In such a case of partial disability he was entitled to two-thirds of the difference between his average weekly wages and his earning capacity subject to reconsideration of the degree of his impairment. Section 8 (21) of Longshoremen's and Harbor Workers' Act. As matters stood, Truppi had no earning capacity. He was therefore awarded $20 per week, or two-thirds of his former weekly wages, subject to a total limitation of $7,500 as provided by section 14 (m) of the act (33 USCA § 914 (m), pending a further order.

Upon the proof, it cannot be said that the findings were so without evidence as to require the District Court to set aside the order of the Deputy Commissioner (under section 21 (b) of the act, 33 USCA § 921 (b), as "not in accordance with law." We cannot weigh the facts. Fact finding is within the sole province of the Commission.

We have summarized the proofs at the hearing to show that there is no question for review based on entire lack of evidence.

The plaintiffs principally object to the order because: (1) It was barred by an accord and satisfaction between the carrier and Truppi; (2) plaintiffs did not have a fair trial.

Prior to the 1st of April, 1928, the carrier had paid Truppi sums aggregating $500 as compensation for his injuries, and on September 28, 1928, gave him a check for $300 bearing the words "in full settlement of all past, present and future claims." This so-called settlement was made after a conference in which both the claimant and the carrier were represented by counsel, and it had been arranged by Willard, a claims examiner in the office of the Commissioner. After payment had been made, Willard notified the claimant and the plaintiffs that the case had been closed in the files of the office "within the limitations provided by section 22 of the act [33 USCA § 922]."

On January 7, 1930, the claimant and a representative of the carrier appeared before the Deputy Commissioner. The claimant was physically examined, and showed indications of headache, vertigo, and impairment of the left arm, as well as loss of hearing. At the time of this examination, the Deputy Commissioner thought that he should have further compensation, and suggested a further award of $2,950 upon the basis of 50 per cent. disability. This did not satisfy the plaintiffs, and a formal hearing was ordered resulting in the award which we have already mentioned.

Truppi presented his claim for compensation to the Commissioner on June 27, 1928. Upon the filing of this claim it was the duty of the Deputy Commissioner to make an investigation and on the application of any interested party to order a hearing. If no hearing was ordered, it was his duty to reject the claim or make an award as provided in section 19 (c) of the act (33 USCA § 919 (c). It is clear that he made no award at the time Willard arranged for the payment of $300 by the carrier. Not only had Willard no power to make an award, which only the Deputy Commissioner could make, but no accord and satisfaction between the parties was lawful when once the jurisdiction of the Commissioner had been invoked and the claim was pending before him. This is clear from section 15 (b) of the act (33 USCA § 915 (b) which provides that "No agreement by an employee to waive his right to compensation under this chapter shall be valid," and from section 16 of the act (33 USCA § 916) which says that "No * * * release, or commutation of compensation or benefits due or payable under this chapter, except as provided by this chapter, shall be valid. * * *" Judge Hutcheson so held in Southern S. S. Co. v. Sheppeard (D. C.) 34 F.(2d) 959, and the decision in Great Lakes Dredge & Dock Co. v. Brown, Deputy Com'r (D. C.) 47 F.(2d) 265, is to the same general effect. Rulings under other statutes can have no bearing where the language of sections 15 (b) and 16, supra, is so explicit.

It is argued that the $300 paid to Truppi was valid under the provisions of section 14 (j) of the act (33 USCA § 914 (j) as a lump sum equal to the then present value of all future periodical payments for compensation. But the adjustment of such a lump sum presupposes an award made in due form. The payment was not only not based on any award and, therefore, was in no sense a commutation of future payments, but Willard would have had no authority to make such a computation, for only the Deputy Commissioner would have the power under the statute. The attempted settlement was made without warrant of law. Indeed the words, "within the limitations provided by section 22 of the Act," appearing in the letter of Willard to Truppi

38

and the plaintiffs, dated October 3, 1927, which stated that the case was closed on the files of the office (fol. 117), show that Willard thought that the attempted award was still open to revision.

The last objection to the award is that the plaintiffs did not have a fair trial. This is based on the statement of the Deputy Commissioner in a letter of March 12, 1930, that so far as he was concerned there was no need of a hearing in the case which he then knew as well as he should at the conclusion of the hearing, and the further statement that there was no way to protect the right of the claimant "except to go into a hearing and fully develop the record, in such shape that it will stand an appeal to the courts if the carrier takes an appeal." However tactless or undesirable such remarks may have been, they fell short of a statement that nothing that might be shown at such a hearing would change his mind. The Commissioner had already a great familiarity with the claimant's case, both by reason of his personal physical examination of Truppi and from records in his office. He doubtless regarded his investigation as full and sufficient. We think his remarks amounted to no more than saying that he felt confident that he was right. They did not indicate that his mind was not open to any proof, but only that when so full an examination had been made no matters affecting the result were likely to be developed.

We hold that the award was lawful, and that the bill to set it aside was rightly dismissed.

Decree affirmed.