### EMPLOYERS LIABILITY ASSUR. CORPORATION, LIMITED, v. HOAGE.

#### No. 6840.

United States Court of Appeals for the District of Columbia.

Decided May 17, 1937.

Norman B. Frost, Frank H. Myers, and Frederick N. Towers, all of Washington, D. C., for appellant.

Leslie C. Garnett, Allen J. Krouse, Z. Lewis Dalby, and W. E. Boote, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a decree of the district court dismissing a bill in equity filed by Employers Liability Assurance Corporation, Limited, as insurance carrier for Walter Brown & Sons, Inc., under the provisions of section 21 (b) of the Longshoremen's and Harbor Workers' Compensation Act in force in the District of Columbia (44 Stat. 1424, 1436, 33 U.S. C.A. § 921 (b); 45 Stat. 600, D.C.Code 1929, T. 19, §§ 11, 12, and 33 U.S.C.A. § 901 note. The bill was brought to enjoin the enforcement of a compensation award made by the Deputy Commissioner in favor of the widow of Jacob B. Hardesty, deceased employee of Walter Brown & Sons, Inc.

Section 2 (2) of the compensation act, 33 U.S.C.A. § 902 (2), reads as follows:

"The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment."

The sole question in this case is whether the record discloses competent evidence in support of the Deputy Commissioner's finding that the death of the employee resulted from an accidental injury

319

arising out of and in the course of his employment. If such finding is supported by evidence, the decree of the lower court must be affirmed. Crowell v. Benson, 285 U.S. 22, 46, 47, 52 S.Ct. 285, 290, 291, 76 L. Ed. 598; Voehl v. Indemnity Ins. Co. of North America, 288 U.S. 162, 166, 53 S. Ct. 380, 381, 77 L.Ed. 676, 87 A.L.R. 245; Del Vecchio v. Bowers, 296 U.S. 280, 287, 56 S.Ct. 190, 193, 80 L.Ed. 229.

The testimony shows, without dispute, that on Saturday, February 15, 1936, Hardesty was employed as a butcher by Walter Brown & Sons, Inc., and in the course of his employment he went into the shackling pen to shackle a calf. The calf proved to be a hard one to shackle. While Hardesty was getting the chain on its legs, the calf was kicking and climbing around and giving him a great deal of trouble. After the job was done, Hardesty came out of the pen complaining that he had hurt himself, that he felt "like something broke loose" and held his hand over the middle of his abdomen as the place where he felt pain. When he started for home, he complained that "his stomach was still bothering him." He was taken home in a car, and when he arrived there he told his wife that he had hurt himself in his stomach. He said, "I got hold of a bad calf today. He jerked me so that I grabbed hold of an iron rail and I gave the calf a jerk and I felt something bust in my stomach." He went to bed and his condition kept getting worse, his fever began to rise, he suffered from nausea and passed a small quantity of blood, and he continuously complained of pain in the abdomen.

The accident occurred on Saturday morning, February 15th; on Sunday and Monday following Hardesty remained at home in bed; on Tuesday he attempted to go to work again, but on Wednesday, February 21st, he was carried to Emergency Hospital for an exploratory operation which was performed on the following Friday. It was found that the entire abdomen was tender to palpation, that there was rigidity of the abdominal muscles and a hard tender mass was found in the lower left quadrant of the abdomen. On the following Wednesday, February 26th, Hardesty died. The immediate cause of his death was pneumonia which the Deputy Commissioner found to be "a natural following of the condition set up by the injury of February 15, 1936, which was followed by septicemia, necessitating operation on February 21, 1936."

It appears without contradiction that Hardesty, up to the time of this accident, was a man of unusual physical strength, about six feet tall weighing 180 pounds, he was in good health, his body well developed and nourished. He had never been sick, and had never missed a day from his work because of any disability, and on the morning of the accident he left home feeling well and in good spirits. He was "in the forties" at the time of his death.

The claimant contends that during the struggle with the calf on February 15th Hardesty's exertion caused a small lesion in the intestinal wall permitting colon bacilli to escape and invade adjoining tissue and the muscles of the abdominal wall, after which the infection spread, causing peritonitis and the terminal pneumonia from colon bacilli from which he died.

On the other hand, it is contended by the appellant that Hardesty died as the result of lobar pneumonia and toxemia traceable directly and proximately to the invasion of the abdominal cavity by colon bacilli with resultant retroperitoneal abscess, general peritonitis, and involvement of the diaphragm and left lung.

Dr. Murphy, the deputy coroner who performed the autopsy on the deceased, testified in part as follows:

"A section of the sigmoid and descending colon revealed an area that appeared traumatized and indurated just below the sigmoid junction. My reason for saying that it appeared traumatized was because of the fact that the mucous membrane was denuded about this area in particular, with some denudation around it but more marked in this place. * * * I was under the impression at the time that there had been a rupture of the sigmoid at this junction. * * * Opening the chest showed a massive left side empyema, that is, pus in the pleural cavity, with well marked and extensive lobar pneumonia involving the lower lobe of the left lung. The pus in the chest cavity had a significant odor, a colon odor. In other words it was the same organism causing the pneumonia that was causing the peritoneal abscess that I described. * * * With the history that the man had never suffered, never had any pain or anything else, any strain or anything else that would cause a sudden increase in the intra-abdominal pressure

would cause a breaking down of muscle fiber in the intestinal tract where this organism could press through this wall. I do not mean the fibrin, but the breaking down of the fibers or the lumen in the gut itself. In other words, a ruptured gut would cause the same thing and you would not have to have any signs of bruise, violence, or trauma. * * * I received this report from Dr. Hunter, but this was my anatomical diagnosis at the time. A perforation of the sigmoid, posterior retroperitoneal infection, generalized peritonitis, empyema, lobar pneumonia, toxemia, and exhaustion."

Dr. Oscar B. Hunter, a witness for the insurance carrier who was not present at the post mortem, but who examined a piece of the intestine, testified in part as follows:

"While no actual perforation of the gut can be found, the pathological picture presented could be definitely attributed to the alleged injury, with contusion or bruising of the tissues of the intestine, and secondary infection taking place from the intestinal content."

When asked how he accounted for the sudden onset of pain at the time of Hardesty's strenuous exertion, he answered:

"Well, he may have torn something in the stroma of the muscle, for example; but I did not see the body. If I had done the post-mortem, I would have found out why. All I have is a piece of intestine upon which I had to base my judgment entirely."

Dr. Howard L. Smith testified on behalf of the insurance carrier as follows:

"He had a tussle with this calf. The patient describes it as a sensation of something tearing or giving way in his lower left abdomen. Now, we have that injury. * * * If we did not have a history of injury, then we would undoubtedly say that it was one of these blood stream infections, migration, or blood stream infection. A man could even have, perhaps, a little localized infection in the intestinal wall, and this organism gets through that way. You can't entirely ignore this injury. * * *"

In our opinion, this testimony sustains the claim that Hardesty's death was caused by the violent wrench suffered by him when handling the calf permitting the escape of colon bacilli causing pus, and finally involving the lower lobe of the left lung, resulting in pneumonia.

Upon the foregoing facts, the Deputy Commissioner made an award of compensation to the surviving widow and minor step-child of the deceased.

In our opinion, the finding and award of the Deputy Commissioner are sustained by competent evidence, and the lower court was justified in dismissing appellant's petition. We affirm the decree of the lower court.