EASTERN S. S. LINES, Inc., v. MONAHAN et al., Deputy Com'rs.

No. 1014.

District Court, D. Maine, S. D.

Dec. 15, 1937.

Nathan W. Thompson, of Portland, Me., for plaintiff.

Edwd. J. Harrigan, Asst. U. S. Atty., of Portland, Me,. for Commissioners.

Frank P. Preti, of Portland, Me., for Gaciento Germaine.

PETERS, District Judge.

This is a bill in equity by the Eastern Steamship Lines, Inc., against a deputy commissioner of the United States Employees' Compensation Commission, asking to have set aside, by injunction, an award of compensation to an employee of the plaintiff as "not in accordance with law."

It appears that the employee, a long-shoreman, in June, 1936, sustained an in-

jury to his back while handling a bale of merchandise. He was immediately treated by a physician acting for the employer, who diagnosed the trouble as lumbosacral sprain. The employee stopped work and took the treatment prescribed by the doctor. After several attempts to work, and working for a short time, in December, 1936, he filed a petition for compensation under the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C.A. § 901 et seq., and after a hearing on February 12, 1937, received the award in question for temporary total disability.

The employee is an Italian by birth, about 57 years old, weighing 245 pounds, of short stature, obviously with little knowledge of the English language, as he testified through an interpreter.

In addition to the above facts, which are not disputed, the deputy commissioner found that the employee, who was illiterate, had been in the service of the plaintiff for 15 years as a winchman and freight handler; that since 1922 he had lost no time from work because of illness or injury; that after 2 months of treatment following the injury in question the claimant, acting on the advice of the employer's physician, made several attempts to resume work, and that he was unable to continue to do so due to pain in his back; and, in the language of the deputy commissioner, "that the claimant is wholly incapacitated for performing his regular work as a longshoreman; that he suffers from a chronic back weakness involving the muscles and ligaments, which is complicated by age, obesity and hypertrophic changes in the lumbar region; that he has been under the continual medical care of the employer's physician; that from a medical viewpoint the claimant can perform light work not requiring bending or heavy lifting; that the claimant has co-operated with the efforts of the employer's physician to rehabilitate him and has attempted to work whenever advised to do so by the doctor, but that light work was not given to him; that from August 17, 1936, to December 14, 1936, the claimant tried to work on five or six different occasions, but that he was given hard work by the employer and was therefore only able to work a few hours; that such light work as the claimant, in his physical condition, is able to do is not available; that on December 14, 1936, in compliance with the doctor's instructions to keep at work as long as possible, the employer provided the claimant with full-time work as a longshoreman; that he was so occupied to and including December 28th, 1936, but was permitted by his employer to rest periodically and to do only such work as he was capable of performing; that on December 28th, 1936, the foreman told him that he must do a full day's work or leave; that as the result of whatever work he did perform, the claimant had increased pain in the back and he was advised by the attending physician to refrain from work for a while; that from December 14th, 1936, to December 28th, 1936, inclusive, which is a period of 2⅕th weeks, the claimant was paid the sum of $84.84 as wages, but that such amount paid does not represent wages which he was physically able to earn nor does it constitute a true or fair wage-earning capacity, considering that his disability was continuing; that there is no occupation or employment which he can engage in and upon which he can rely for a livelihood; but that for a period of 2⅕th weeks, from December 14, 1936, to December 28, 1936, he did not sustain any wage loss, and that he is entitled to 34⅘ths weeks compensation at $22.33 per week for such temporary total disability; that the compensation for temporary total disability to February 12, 1937, inclusive, is $727.32; that the employer has paid the claimant $360.58 as compensation."

In brief, the deputy commissioner found that the employee, for a certain period, was totally incapacitated from performing a longshoreman's work or any manual labor, except some light work that required no bending or heavy lifting, and that such work was not available. Also, that, being illiterate, he was excluded from any field of labor except manual labor.

◼ As to the findings of fact, the issue to be decided by this court is not whether the deputy commissioner was right in his conclusions from the evidence—as to which there might be a difference of opinion—but whether there was evidence before him to support his findings.

The Supreme Court, in the case of Crowell v. Benson, 285 U.S. 22, at page 46, 52 S.Ct. 285, 291, 76 L.Ed. 598, states it thus: "Apart from cases involving constitutional rights to be appropriately enforced by proceedings in court, there can be no doubt that the act contemplates that as to questions of fact, arising with respect to injuries to employees within the purview of the act, the findings of the deputy com-

missioner, supported by evidence and within the scope of his authority, shall be final. To hold otherwise would be to defeat the obvious purpose of the legislation to furnish a, prompt, continuous, expert, and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task." Voehl v. Indemnity Ins. Company, 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245. Lumber Mutual Cas. Ins. Co. v. Locke, 2 Cir., 60 F. 2d 35.

■ As to the finding of disability: The deputy commissioner had the benefit of the personal appearance and testimony of the employee, who described his complaints and told how he was unable to work on account of the severe pain consequent upon the attempt to do so. The man's own claims were also, to a considerable extent, supported by the testimony of two doctors who thought that the injury was more than a muscle sprain; that the ligaments might have been pulled; and that it was out of the question for the man to do any heavy work. On this point other reputable doctors were called by the plaintiff and testified that in their opinion the employee was only partially disabled. The deputy commissioner, however, after balancing all the evidence, found the fact of disability. From the fact that there was evidence to balance it follows that I have no authority to invade the special province of the deputy commissioner whose conclusions are final if based on evidence.

The finding that the employee was illiterate was based on his own testimony and on that of the agent for the plaintiff, who testified that there was a certain line of light work, "such as freight-writer, but that he (the employee) hasn't the education to do it."

That there was no other work that an illiterate man in his condition could do was partly a question of extent of disability and partly a question of available jobs. The deputy commissioner found a handicap so extensive as to leave very little, if any, margin of earning capacity in the claimant, and there was no evidence offered of any so-called "light work" of such an uncommon nature as to be available to an illiterate longshoreman who could not bend his back.

■ Under the circumstances here disclosed, of a man who by reason of phy-

sical injury and disability could do only a special and very limited class of work, a man left a "nondescript" in the labor market, the burden was upon the employer to show the availability of employment. Consona v. R. E. Coulborn & Co., 104 Pa. Super. 170, 158 A. 300; 33 A.L.R. page 122, note. White v. Tennessee Consol. Coal Co., 162 Tenn. 380, 36 S.W.2d 902.

■ As to the findings of the deputy commissioner, it must be said, upon the whole, using the language of the Court in Lumber Mutual Casualty Ins. Co. v. Locke, 2 Cir., 60 F.2d 35, 37, "Upon the proof, it cannot be said that the findings were so without evidence as to require the District Court to set aside the order of the Deputy Commissioner (under section 21 (b) of the act, 33 U.S.C.A., § 921(b), as 'not .in accordance with law.' We cannot weigh the facts. Fact finding is within the sole province of the Commission."

"Such logical deductions and inferences as may be and are, in fact, drawn by the Commissioner from the direct evidence must be taken as established facts and not within the scope of the power of the court to review." Michigan Transit Corp'n v. Brown, D. C., 56 F.2d 200, 202, and cases cited. Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229.

■ Also it should not be overlooked that the act is to be liberally construed in favor of the injured employee and his dependents. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 18, 76 L.Ed. 516. Jarka Corp. v. Monahan, 1 Cir., 62 F.2d 588.

■ The plaintiff objects to the figures in the award on the ground that it should have been made on the basis of two-thirds of the difference between the employee's wages before the injury and his wage-earning capacity afterward. That, however, represents the statutory provision for temporary partial disability; whereas here the award was made on the basis of temporary total disability; it having been found as a fact, supported by evidence, that the employee was only fitted for manual labor and that, for a certain time, he was totally incapacitated from performing such, unless some light work could be found adapted to his special condition; and, as to that, there was no evidence showing that it was available.

I think that a reasonable interpretation of the law justified the deputy commis-

sioner in making his award on the basis of temporary total disability.

The plaintiff suggests that it has not received full credit for payments made the employee, but I am unable to find from any evidence in the case submitted to me that the plaintiff has not been given all proper credits by the deputy commissioner.

It follows, of course, that the application for injunction must be denied and the bill dismissed, with costs.