The motions of defendants to dismiss and for summary judgment are sustained.

**ROWEN et al. v. BROWN, Deputy Com'r.**

No. 289.

District Court, W. D. Michigan, N. D.

June 20, 1945.

Findings of Fact.

1. This is a suit under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., to set aside and to enjoin enforcement of a certain award and amended award entered by respondent in favor of Julia Ziemer and her children, following the death of Elmer J. Ziemer by drowning in the Straits of Mackinac, on November 26, 1943.

2. Following a hearing upon the original motion of respondent to dismiss the libel, an order was made on December 22, 1944, remanding the case to the Deputy Commissioner for specific findings of fact upon the controlling issue in the case, namely, whether Ziemer was or was not a member of the crew of the vessel "Industry", within the meaning of the excepting clause in the Longshoremen's Act, Sec. 903(a) (1), 33 U.S.C.A., and for taking additional testimony if deemed necessary.

3. No additional evidence was presented before the Deputy Commissioner, and on January 31, 1945, he filed amended findings of fact and amended award, as follows:

"Amended Findings of Fact

"That on the 26th day of November, 1943, Elmer J. Ziemer, the employee herein, was in the employ of John Rowen doing business as the Roen Steamship Company, employer above named, at the Straits of Mackinac in the Tenth Compensation District established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, and that the liability of the employer for compensation under said Act was insured by the Employers Mutual Liability Insurance Company; that the employee herein, Elmer J. Ziemer, was hired about July 6, 1943, as a meat cutter at the cold storage unit of the employer at Sturgeon Bay, Wisconsin, to prepare meat for the use of the vessels owned or operated by the employer, and when not so occupied to work around the yards of the employer at that place; that, thereafter the employer contracted with the United States Engineers for the removal or the reduction of the wreck of the S. S. 'George M. Humphrey' which had sunk in the Straits of Mackinac, a mile and a half off the south shore of the Strait, was a menace to navigation, and had been abandoned by its owners; that said vessel was 600 feet long and loaded with iron ore, and the contract of the Roen Steamship Company required them to raise and remove the wreck, or cut it down to a level where it would no longer menace navigation; that in return for this service the Roen Steamship Company was to receive all salvage from the said vessel; and that this was a maritime enterprise; that to facilitate this operation the employer herein rented a meat market in Mackinaw City, Michigan, in which to keep meats for

the men working thereon and to supply other vessels of the Company, as needed; that about the 16th of October, 1943, the employer had the salvage barge 'Industry' towed from Sturgeon Bay to the above wreck by two tow boats, and solidly anchored over the wreck, to six concrete blocks; that the 'Industry' had no power of its own but was equipped with a steam wrecking crane, diving equipment and quarters for the workmen engaged on the salvage work; that these workmen consisted of a foreman who operated the crane, two divers, two divers' tenders, three mechanics, two laborers, a night watchman and a cook; that the 'Industry' was not used in navigation and had no 'crew' as that term is used in sections 2(3), and 3(a) (1), of the Longshoremen's and Harbor Workers' Compensation Act; that the employee, Elmer J. Ziemer, was taken along on this job to continue his work as a meat cutter at Mackinaw City, to supply the 'Industry' and other vessels with meat, and to serve as one of the laborers on board the 'Industry' in the salvage operation; that he had no part in the towing of the 'Industry' from Sturgeon Bay, Wisconsin to the Straits of Mackinac, a distance of some 150 miles, and, beginning with the 27th day of October, 1943, served as a laborer and meat cutter only; that he and the other workmen, except the divers, slept and ate on board the 'Industry', and he was paid an hourly wage for his work; that there is no evidence that up to the time of his death, the work had been other than the unloading of the cargo of the 'George M. Humphrey', and storing it on shore and this was also a maritime enterprise; that he performed no service in connection with the navigation of any of the vessels of the employer, signed no articles, had no rating as a seaman, and was not a member of the crew of any vessel, as that term is used in sections 2(3) and 3(a) (1) of said Act; that on said 26th day of November, 1943, the employee had gone ashore in the tug 'A. & M. Link', to prepare meat in a cooler rented by the employer in Mackinaw City, Michigan, for use on these vessels, and was returning on board the same tug to spend the rest of the night on board the 'Industry,' when he fell from the tug a mile from shore and was drowned; that said injury and death arose out of and in the course of said employment; that the body of the employee has not been recovered and no burial expense incurred; that the average annual earnings of the employee amounted to $1950.00; that the employee left surviving him, claimant, Mrs. Julia Ziemer, his widow born November 16, 1900; three children, Lucille Sandra Ziemer, born June 18, 1928, James Herman Ziemer, born April 25, 1930, and Gary Elmer Ziemer, born October 16, 1934; that claimant, Mrs. Julia Ziemer, is entitled to compensation at the rate of $13.12½ per week beginning with the 26th day of November, 1943, on her own behalf, and $3.75 per week for each of said children from the same date until they shall respectively reach the age of 18 years, or their dependency be otherwise terminated according to law; that the amount of compensation accrued to and including the 8th day of February, 1944, 10⁵⁄₇ weeks, is $261.16; that claimants' attorney, Robert Branand, Jr., has performed services for them in this proceeding of the reasonable value of $250.00 and is entitled to a lien on the foregoing compensation, payable $150.00 in cash and $5.00 per week for 20 weeks.

"Upon the foregoing findings of fact the Deputy Commissioner makes the following

### "Amended Award

"That the employer, John Rowen, doing business as Roen Steamship Company, and the insurance carrier, Employers Mutual Liability Insurance Company, shall pay to Mrs. Julia Ziemer, $261.16, less $150.00 to be deducted therefrom and paid to Robert Branand, Jr., 175 W. Jackson Boulevard, Chicago, Illinois, and the further sum of $13.12½ per week for her own benefit and $3.75 per week for the benefit of each of the children, Lucille Sandra Ziemer, James Herman Ziemer and Gary Elmer Ziemer, beginning with the 8th day of February, 1944, until the termination of the dependency of the respective beneficiaries according to law, less the sum of $5.00 per week to be deducted from the gross weekly payment and paid to Robert Branand, Jr., for a period of 20 weeks; subject to credit for payments made pursuant to the Compensation Order entered herein on March 6, 1944.

"Given under my hand at Chicago, Illinois this 31st day of January, 1945
"Leonard C. Brown
"Deputy Commissioner"

4. Pursuant to leave, supplemental libel and petition were filed February 24, 1945,

and thereafter it was stipulated that the motion to dismiss previously filed should stand as a motion to dismiss the libel and petition and the amendment thereto as originally filed, and the supplemental libel and petition so filed.

5. The controlling question involved is whether or not the evidence before the Deputy Commissioner showed Ziemer to have been at the time of the accident a "member of the crew" of the vessel "Industry" and therefore not within the coverage of the Longshoremen's Act. It is the claim of respondent that the motion to dismiss should be granted, for the reason that the libel does not set forth a cause of action, in that it discloses that the findings of the Deputy Commissioner are supported by evidence and are therefore conclusive.

6. Careful review of the transcript of the testimony taken before the Deputy Commissioner establishes the fact that there is sufficient evidence to support the findings of fact to the effect that Elmer J. Ziemer was not a member of the crew of the vessel "Industry", within the meaning of 33 U.S.C.A. § 903(a) (1).

### Conclusions of Law.

1. This court has jurisdiction of the subject matter and of the parties.

2. The finding of the Deputy Commissioner that Elmer J. Ziemer was not a member of the crew of any vessel on the 26th day of November, 1943, is supported by substantial evidence.

3. The compensation order filed March 6, 1944, as amended January 31, 1945, is in all respects in accordance with law.

4. Respondent is entitled to judgment dismissing the libel.

5. An order will be entered accordingly.

Eldredge & Eldredge, of Marquette, Mich., for libellant.

Joseph F. Deeb, U. S. Atty., of Grand Rapids, Mich., for respondent.

RAYMOND, District Judge.

The findings herewith filed clearly disclose the factual basis for the award and amended award made by the Deputy Commissioner.

His findings regarding the circumstances, nature, extent and consequences of injuries are conclusive when supported by evidence. South Chicago Coal & Dock Co. v. Bassett, 7 Cir., 104 F.2d 522. A very careful review of the record made before the Deputy Commissioner necessitates approval of the finding that deceased was not a member of the crew on the date in question. It is the view of the court that Congress, in making the exception to coverage found in section 903(a) (1), 33 U.S.C.A., did not intend to exclude from the benefits of the act those who are on board with no likelihood that then or thereafter will they be any part of a navigating crew. The "Industry" at the time of the accident was engaged in a purely salvaging operation, serving only the purpose of removing an obstruction to navigation in the Straits of Mackinac. It is clear that deceased was employed solely because of his skill in the cutting, storage, and preparation of meat for food for the crews of several vessels operated by the Rowen Steamship Company.

The court is of opinion that the following quotation correctly summarizes the law concerning the accepted meaning in ordinary parlance of the word "crew," and that the purpose of Congress was to include in the exception only those who regularly or ordinarily are engaged in seafaring and navigation, as distinguished from those whose tasks are of such a nature that they are independent of navigation:

"In maritime law, and in a general sense, the ship's company, embracing all the officers, as well as the common seamen. The term, however, sometimes includes the officers and the common seamen, excluding the master; and sometimes includes the common seamen only, excluding the master and the officers. When the crew of a vessel is referred to, those persons are naturally and primarily meant who are on board her aiding in her navigation, without reference to the nature of the arrangement under which they are on board, and, in a particular connection, the term has been defined as meaning that body of men who in the common parlance make up the ship's complement, those who regularly or ordinarily are engaged in seafaring and navigation, as distinguished from those whose tasks are of such a nature that they are independent of navigation in their scope, such as tasks which might as well have their background on

862

shore, or at the dock, such as watchmen, etc. The word implies a definite and permanent connection with the vessel, an obligation to forward her enterprise and to protect her in emergency, and a right to look to her and her earnings for wages; also the word implies subjection to the commands of the master, if the vessel has a master. * * *" 21 C.J.S., Crew, pages 1149, 1150.

See also, authorities cited 21 C.J.S., Crew, pp. 1149, 1150, and the 1945 Pocket Supplement thereto.