BASSETT, Deputy Com'r, et al. v. MASS-MAN CONST. CO.

No. 11800.

Circuit Court of Appeals, Eighth Circuit.

May 2, 1941.

Rehearing Denied June 9, 1941.

Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo. (Francis M. Shea, Asst. Atty Gen., Melvin H. Siegel, Sp. Asst. to Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Walter S. Surrey, Atty. Department of Justice of Washington, D. C., on the brief), for appellants.

Ben Ely and Walter G. Stillwell, both of Hannibal, Mo. (Roy W. Crimm, of Kansas City, Mo., on the brief), for appellee.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is an action, brought by appellee, to review an award by appellant (Deputy Commissioner of the United States Employees' Compensation Commission) made for personal injuries under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. From a decree enjoining enforcement of the order, this appeal is brought by the deputy commissioner.

During oral presentation of the appeal, appellant challenged the jurisdiction of the trial court. This challenge is that this action was in the District Court for the Eastern District of Missouri where, he contends, the injury did not occur while the governing Act (U.S.C.A. Title 33, § 921) limits jurisdiction of such actions to "the Federal district court for the judicial district in which the injury occurred." After the hearing on appeal, we requested briefs upon this issue of jurisdiction and have been rewarded with helpful briefs evidencing thorough investigation of the subject by counsel for both parties. We must determine this issue of jurisdiction before we can consider the verity of the decree since that jurisdiction is challenged. Kvos, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S. Ct. 780, 80 L.Ed. 1135.

This injury occurred near the middle of the Mississippi River during the construction of a dam across the river. This construction was opposite Ralls County, Missouri, which county is included in the Northern Division of the Eastern District of Missouri. The statute defining the boundaries of the Northern Division of the Eastern District is that it "shall include the territory embraced on the 1st day of July, 1910, in * * *; also the territory embraced on the date last mentioned in the counties of * * * Ralls * * *, which shall constitute the northern division of said

district; * * *." U.S.C.A. Title 28, § 171. The eastern boundary of Ralls County, as fixed by State statute, is the "middle of the main channel" of the Mississippi River R.S.Mo.1939, § 13583, Mo.St.Ann. § 1.1924, p. 6354.

The contentions of appellant are that the evidence shows that the injury occurred *east* of such main channel and, therefore, outside the Eastern District of Missouri.

We have carefully examined the evidence and conclude that it shows this injury did occur east of such main channel as such channel existed both before any construction work in the river and also as at the time of injury. However, this does not dispose of such opposed contentions of appellee as are applicable even though the injury occurred east of the main channel. Appellee contends (1) that the above quoted requirement in Section 921 of Title 33 is one of venue and not of jurisdiction of subject matter; (2) that the channel line has no control here because there is concurrent jurisdiction over the entire river in Missouri, with Illinois, under the Enabling Acts of Admission of the two States (3 Stat. 428; 3 Stat. 545) and the successive constitutions of Missouri.

## (1) Section 921.

This contention is that the requirement in Section 921 that all judicial reviews of compensation orders shall be "instituted in the Federal district court for the judicial district in which the injury occurred" is not jurisdictional except in the sense of venue, and, therefore, could be and was waived here.

First we examine whether this statutory provision is one of venue only. Appellee contends that this action is strictly an equity suit for an injunction and therefore is purely a suit in personam since equity acts only against the person and is never in rem; furthermore, that an injury under the Act might take place anywhere and, therefore, the action is transitory in nature; also, that this section fixes the jurisdiction for review in the District Courts "as a class" and not exclusively in a particular District Court; again, that the designation of a particular Court is one of venue being prompted solely by a purpose to serve the convenience of the parties. The resolution of these contentions must be found in the character and purposes of the Act and in the particular language of this Section [1], as a part of the Act.

---

[1] The entire Section 921 (U.S.C.A.Title 33) is as follows:

"§ 921. Review of compensation orders. (a) A compensation order shall become effective when filed in the office of the deputy commissioner as provided in section 919 of this chapter, and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subdivision (b) of this section, shall become final at the expiration of the thirtieth day thereafter.

"(b) If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred (or in the district court of the United States for the District of Columbia if the injury occurred in the District). The orders, writs, and processes of the court in such proceedings may run, be served, and be returnable anywhere in the United States. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless upon application for an interlocu-

tory injunction the court, on hearing, after not less than three days' notice to the parties in interest and the deputy commissioner, allows the stay of such payments, in whole or in part, where irreparable damage would otherwise ensue to the employer. The order of the court allowing any such stay shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that such irreparable damage would result to the employer, and specifying the nature of the damage.

"(c) If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred (or to the district court of the United States for the District of Columbia if the injury occurred in the District). If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order by writ of injunction or by other proper process, manda-

■ The purpose of the Act, as stated by the Chairman of the Judiciary Committee of the Senate (Cong.Rec. Vol. 67, p. 10614), was to give longshoremen a national workmen's compensation law to supply the void (in that respect) by decisions of the Supreme Court that longshoremen, because exclusively within admiralty jurisdiction, could not come within State compensation laws (Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas. 1917E, 900), nor could be placed therein by Act of Congress (Washington v. W. C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145). The Act provides conditions for and rates of compensation for longshoremen. Administration of the Act was placed in the then existing United States Employees' Compensation Commission. The Act requires the Commission to divide the country and waters into "compensation districts" and to assign one or more "deputy commissioners" to each (see Section 939). Notices of injuries (Section 912) and claims for compensation (Section 913) are to be filed with "the deputy commissioner in the compensation district in which such injury or such death occurred" who shall hear and determine the claim (Section 919).

The courts are brought into the prescribed procedure in connection with four matters: (1) for appointment of a guardian for a minor or an incompetent (Sec. 911); (2) to enforce behavior and testimony before the deputy commissioner (Section 927); (3) to enforce collection of defaulted payments (Sec. 918); (4) to review (Sec. 921[b]) or to enforce (Sec. 921[c]) an award of compensation. It will be noted that as to each of these matters a different court is (with one partial exception) named.[2] The careful discrimination

in designation of courts shown in these four sections is suggestive that only the courts so designated were intended to act in the particular matters covered by each section—that is, that such designations were intended as jurisdictional. So much for the general view.

We pass next to the particular section (§ 921) involved here. Subdivision (a) of the section provides that compensation orders shall become final thirty days after filing in the deputy commissioner's office "unless proceedings for the suspension or setting aside of such order are instituted as provided in subdivision (b) of this section." Subdivision (b) covers review. Subdivision (c) covers enforcement. Subdivision (d) is that "Proceedings for suspending, setting aside, or enforcing a compensation order * * * shall not be instituted otherwise than as provided in this section and section 918 of this chapter."

■■ Our special concern is with subdivision (b) as a part of this section. This subdivision prescribes the procedure to be "through injunction proceedings". Although so described, the proceeding is purely one of judicial review of the action of an administrative agency. It lacks a cardinal characteristic of ordinary injunction proceedings directed at administrative orders in that there is (except as to jurisdictional issues) no trial de novo of the facts. Crowell v. Benson, 285 U.S. 22, 46, 52 S.Ct. 285, 76 L.Ed. 598; Powell v. Hoage, 61 App.D.C. 99, 57 F.2d 766, 767. Also, the reviewing court is acting really as a court in admiralty with the power to grant injunctive relief especially given by this section. Crowell v. Benson, 285 U.S. 22, 49, 52 S.Ct. 285, 76 L.Ed. 598. While the proceeding is injunctive yet, being in the nature of a review proceeding, it is "somewhat analogous to an appeal." Associated Indemnity Corp. v. Marshall, 9 Cir., 71 F.2d 235, 236. In short, this proceed-

tory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.

"(d) Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided in this section and section 918 of this chapter."

[2] For appointment of guardian, Section 911 designates "a court of competent jurisdiction"—which would usually be a State probate or surrogate court. To enforce behavior and testimony before a

deputy commissioner, Section 927 designates "the district court having jurisdiction in the place in which he [deputy commissioner] is sitting." To enforce collection of defaulted payments, Section 918 designates "the Federal district court for the judicial district in which the employer has his principal place of business or maintains an office, or for the judicial district in which the injury occurred." To review or to enforce an award, Section 921 designates "the Federal district court for the judicial district in which the injury occurred."

ing is not the ordinary injunction but is a review proceeding in an admiralty court wherein Congress drew "upon another system of procedure to equip the court with suitable and adequate means for enforcing the standards of the maritime law as defined by the act." Crowell v. Benson, 285 U. S. 22, 49, 52 S.Ct. 285, 292, 76 L.Ed. 598.

■ Considering the real character of this proceeding as defined in subdivision (b), the apparently meticulous care with which the use of the various courts is defined in the several sections of the Act, and the emphatically expressed limitations in subdivision (d), we think the requirement that the proceeding be in the court of the district wherein the injury or death occurred is not merely one of venue but is jurisdictional.

### (2) Concurrent Jurisdiction.

■ This contention is, in effect, that the thalweg of the river does not affect jurisdiction of the Eastern District of Missouri because the State of Missouri has concurrent jurisdiction, with Illinois, of the entire river from bank to bank. This position is based upon Enabling Acts under which Missouri (3 Stat. 545) and Illinois (3 Stat. 428) were admitted and upon the provisions in successive Constitutions of Missouri (Mo.Const.1820, Art. I; Mo.St. Ann.Const.1875, Art. I, sec. 1) asserting such "concurrent jurisdiction" and the decisions of Missouri (State v. Kurtz, 317 Mo. 380, 295 S.W. 747; Sanders v. St. L. & N. O. A. Line, 97 Mo. 26, 10 S.W. 595, 3 L.R.A. 390. Swearingen v. Steamboat Lynx, 13 Mo. 519) exercising such jurisdiction.

There can be no doubt that the above Enabling Acts authorized the States of Missouri and of Illinois to assume "concurrent jurisdiction" over the entire waters of the Mississippi lying between them. The same Acts defined the western boundary of Illinois to be "the middle of the Mississippi river" (3 Stat. 429) and the eastern boundary of Missouri to be "the middle of the main channel" of that river (3 Stat. 545). The first Constitution of Missouri (that of 1820) under which the State was admitted defined the eastern boundary of the State to be "in the middle of the main channel" of the Mississippi River (Art I) and declared "The State shall have concurrent jurisdiction on the river Mississippi" (Art. X, Sec. 2). The substance of these constitutional provisions has been preserved in subsequent drafts of the State Constitution. Nor is there doubt that Missouri courts have exercised civil (Sanders and Swearingen cases, supra) and criminal (State v. Kurtz, supra) jurisdiction over the entire river. However, this situation as to boundaries and concurrent jurisdiction does not, of itself, determine the issue before us.

The territorial limits of the District Courts of the United States are defined solely by national statutes. The influence of the above situation has place only as an element to be considered in construction of the national statute defining the boundaries of the Eastern District of Missouri.

Section 171 of Title 28, U.S.C.A., defines the boundaries of this district and of the divisions thereof. This definition of the "northern division" is "the territory embraced on the date last mentioned [July 1, 1910] in the counties of * * * Ralls * * *." The eastern boundary of Ralls County is defined as being "in the middle of the main channel" of the Mississippi River. R.S.Mo.1939, Sec. 13583, Mo.St. Ann. § 11924, p. 6354. From these two definitions, taken alone, it would seem clear that the northern division (as to Ralls County) extended only to the middle of the main channel of the river.

What effect has the "concurrent jurisdiction" situation upon this construction? We think none for the reasons following. The general plan of definition by Congress of the territorial boundaries of judicial districts is to establish definite and exclusive territorial limits by State boundaries; or (where there is more than one district in a State) by county boundaries. Title 28 U.S. C.A. chap. 5, § 141 et seq. Further, this plan is to express any inclusion of "waters" and to have no overlapping or concurrent jurisdictions. Title 28 U.S.C.A. chap 5. In Districts of only four States (New York, Tennessee, Washington and West Virginia) are boundary "waters" expressly included. Title 28 U.S.C.A. Sections 178, 188, 193, 194. As to only two districts (Southern and Eastern New York) is concurrent jurisdiction over waters expressed. Title 28 U.S.C.A. Sec. 178. In view of this clear Congressional general plan as to territorial limits of districts and in view of the clear and definite expressions of Congress as to the few exceptions to this general plan, we think an absence of such expression is convincing that Congress did not intend the construction for which appellee contends.

## Conclusion.

Since we determine lack of jurisdiction in the Eastern District of Missouri to entertain this action, the decree will be reversed with instructions to set aside the decree and dismiss the action for want of jurisdiction at the costs of appellee.