**WEST KENTUCKY COAL CO. et al. v. McMANIGAL, Deputy Com'r, et al.**

Civil Action No. 674.

District Court, E. D. Illinois.

Aug. 27, 1943.

Wheeler & Shelbourne, of Paducah, Ky., and Dewey & Cummins, of Cairo, Ill., for plaintiffs.

Ray M. Foreman, U. S. Dist. Atty., of Danville, Ill., and H. P. Miller, Sp. Atty., of Washington, D. C., for defendant K. G. McManigal, Deputy Commissioner, etc.,

T. S. Waller, of Paducah, Ky., for defendant Koppers Co.

Adrian H. Terrell and Roy Garrison, both of Paducah, Ky., for defendant Elsie Watson, widow of Jefferson L. Watson, deceased.

WHAM, District Judge.

This cause arises under the Act of Congress known as the Longhoremen's and Harbor Workers' Compensation Act, being Section 901 et seq., Title 33 U.S.C.A. It is an action under the authority of Section 921 of said Title 33 to set aside and enjoin the enforcement of a compensation order made by the defendant K. G. McManigal, deputy commissioner of the United States Employees' Compensation Commission in and for the Ninth Compensation District, wherein the plaintiffs herein were ordered to pay compensation to the widow and children of Jefferson L. Watson, deceased, by reason of the accidental injury and death of said Jefferson L. Watson due to an accidental explosion on the navigable waters of the Ohio River near the Illinois shore opposite Paducah, Kentucky. An interlocutory injunction was granted following a preliminary hearing and the case is now before the court after final hearing.

The questions presented for determination are:

(1) Whether the accident in question occurred in the Eastern District of Illinois so as to give this court jurisdiction of this action.

(2) Whether the accident occurred in the Ninth Compensation District, as established and defined by the regulations duly promulgated under said Longshoremen's and Harbor Workers' Compensation Act so as to give defendant McManigal jurisdiction of the application for compensation under said Act.

(3) Whether the relationship of master and servant or employer and employee existed between Jefferson L. Watson, now deceased, and West Kentucky Coal Company at the time of the accident.

(4) Whether the accident and the injury to said Jefferson L. Watson arose out of his employment by the plaintiff West Kentucky Coal Company.

The first three questions are being considered de novo in this court. The issue presented by the fourth question is whether there was evidence in the original record to support, as a matter of law, the affirmative finding of the deputy commissioner. Crowell v. Benson, 285 U.S. 22, 52 S. Ct. 285, 76 L.Ed. 598.

The case is submitted on the record of evidence made in the hearing before said deputy commissioner, on certain evidence introduced on the hearing of plaintiffs' motion for an interlocutory injunction and on defendants' motion to dismiss, and on a stipulation entered into at the time of the hearing.

As a guide to the preparation of the formal findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the decree to be entered thereon, I will indicate certain essential findings and conclusions but leave details for fuller expression in the formal findings and conclusions.

### Findings of Fact

(1) Certain facts, now found, were stipulated as follows: That Jefferson L. Wat-

son died as a result of injuries received in an explosion which occurred Tuesday, July 28, 1942, while the decedent was upon a certain barge which was then and there located upon the waters of the Ohio River at a point against the shore of Massac County in the State of Illinois, approximately opposite Kentucky Avenue, Paducah, Kentucky, as extended in a projected line across said Ohio River; that the left front of the bow or front portion of said barge was against said portion of the Illinois shore and the balance of said oil barge which was approximately two hundred feet in length, floated upon the waters of the Ohio River, the rear or stern thereof lying downstream and diagonal to said shore, said oil barge being headed in a Southeast direction; that the point at which said barge was located against the shore of Massac County, State of Illinois, was, at the time of said explosion, East and on the Illinois side of the low water mark on the Illinois shore line of said Ohio River, as said low water mark existed prior to the year 1928, when the dam referred to in the evidence was constructed, and that said barge on which the explosion occurred, except the port side of the bow, which was against the bank, was on the navigable waters of the Ohio River.

(2) The accident occurred on the navigable waters of the Ohio River within the boundaries of the County of Massac, State of Illinois, and within the statutory boundaries of the Federal judicial district designated as the Eastern District of Illinois.

(3) The accident occurred on the navigable waters of that part of the Ohio River which lies between Kentucky and Illinois within the meaning of Section 31.2 of the United States Employees' Compensation Commission Regulations Governing the Administration of Longshoremen's and Harbor Workers' Compensation Act which establishes and defines District No. 9 (Ninth Compensation District) under authority of 33 U.S.C.A. § 939, and occurred within the limits of said Ninth Compensation District so established and defined.

(4) At the time of the accident said Jefferson L. Watson was an employee of the plaintiff West Kentucky Coal Company and was not the employee either special or otherwise of defendant Koppers Company.

(5) There is competent evidence in the record to support the finding of the defendant K. G. McManigal, deputy commissioner, United States Employees' Compensation Commission, that said Jefferson L. Watson died by reason of an accident and injuries that arose out of and in the course of his employment by West Kentucky Coal Company.

(6) I find that at the time of said accident said Jefferson L. Watson had not abandoned his employment by said plaintiff or abandoned the work which he was employed by said plaintiff to perform.

### Conclusions of Law

(1) The accident occurred within the Eastern District of Illinois and this court has jurisdiction of this cause.

(2) The accident occurred within the Ninth Compensation District and within the jurisdiction of the defendant K. G. McManigal, deputy commissioner, United States Employees' Compensation Commission, and the compensation proceedings herein before said McManigal were within his jurisdiction as such deputy commissioner.

(3) Said Jefferson L. Watson, at the time of the accident which caused his death, was the employee of the plaintiff West Kentucky Coal Company and not the employee of the defendant Koppers Company.

(4) That there is sufficient evidence to support the finding of said deputy commissioner that the fatal injury to said decedent, Jefferson L. Watson, arose out of and in the course of his employment by the West Kentucky Coal Company so that it cannot be said that said finding is erroneous as a matter of law.

(5) Plaintiffs' complaint must be dismissed because it is not supported by the evidence or by the law, the interlocutory injunction heretofore allowed must be set aside and the prayer for permanent injunction and other relief denied.

My reason for substantially repeating certain findings in the conclusions is the difficulty, without unduly extending the findings, of avoiding the inclusion in some measure of conclusions of law in a clear statement of the findings though it is a practice to be shunned in so far as possible.

█ As to the jurisdiction of this court there is little or no controversy. It was not disputed that the accident occurred on the Illinois side of the low water mark of the Ohio River as it existed prior to the construction of Dam 52 and that said low water mark or line constituted the boundary line of Massac County, Illinois, on its Ohio River side at the time of the accident. Since the accident occurred in Massac

County, Illinois, and since the Eastern District of Illinois includes all of Massac County (Judicial Code, § 78, 28 U.S.C.A. § 152), it is apparent that the accident occurred within said district and that this court has jurisdiction of the action under 33 U.S.C.A. § 921, which provides that an injunction proceeding to suspend or set aside an unlawful compensation order may be instituted in a Federal district court for the judicial district in which the accident occurred.

Whether the accident occurred in the Ninth or in the Tenth Compensation District is the subject of sharp controversy. The dispute involves an interpretation of the words of said regulation 31.2 which define the questioned boundary of District No. 9 as, "the State of Kentucky, including that part of the Ohio River between Kentucky and Illinois" and which define the questioned boundary of District No. 10 as, "the State of Illinois excluding * * * * that portion of the Ohio River between Illinois and Kentucky."

■ There seems to be no logical reason to suppose that the Commission who drafted the regulation establishing and defining said boundary line intended to follow either state lines or the lines of the federal judicial districts. To avoid, as far as possible, all jurisdictional questions relating to hearings before the deputy commissioners and to keep such questions as simple as possible, when presented, would seem to be the purpose of the definitive language used. To that end it was important that the boundary not be located in the river, but along the outer edge of the navigable waters of the river. This, I believe, was the meaning and purpose of the language quoted from the regulations in the preceding paragraph.

■ Counsel for plaintiffs suggest that it is important that the lines of the compensation districts coincide with the lines of the judicial districts to avoid unseemly conflicts of jurisdiction between the federal district courts. If the Act be carefully read, it would appear, as indicated by Judge Stone in the case of Bassett v. Massman Const. Co., 8 Cir., 120 F.2d 230 at page 233, that the jurisdiction of the various courts which are brought into the procedure under the Act is carefully and specifically defined. I see nothing that should have caused the Commission to fear a conflict between the courts if the boundary of the compensation districts here in question failed to coincide with the line separating the judicial districts.

■ Counsel for plaintiffs further argue that the regulation establishing the compensation districts here in question was originally promulgated before Dam 52 was constructed across the Ohio River and that it is but reasonable to believe that the Commission intended to establish a fixed boundary rather than one that might be varied from time to time by the work of engineers on the river. While the argument might be unanswerable if the ownership of private property or the ownership and jurisdiction of states were involved and would be persuasive were the jurisdiction of courts being defined, it is not convincing when applied to the boundaries of compensation districts. The importance of keeping all of that part of the river between Kentucky and Illinois in one district at all times to avoid jurisdictional difficulties such as are constantly arising in the courts where rivers are divided lengthwise by jurisdictional lines (Bassett v. Massman Const. Co., supra) justifies the sacrifice of the quality of fixity of the boundary line at all times to achieve certainty of location at any given time. The sacrifice of the quality of fixity and the device of a boundary line which always inscloses all of that part of the river between Kentucky and Illinois, regardless of changes in the river, renders jurisdictional disputes remote. That the changes in the river and consequential changes in boundary lines of the districts should be brought about by government engineers rather than by nature would seem unimportant. The Commission would be presumed to have in mind at the time the regulation was drawn that the federal government had for many years been administering constantly changing legislation relating to harbors and rivers and that the then existing lines of the navigable rivers of America would thereafter, in all probability, be subjected to unforseeable modification by the government. That was an added reason for giving flexibility to the district boundary lines involving rivers in the effort to achieve jurisdictional certainty.

■ The question as to whose employee deceased was at the time of the accident is interesting. The evidence shows that the pump boat was rented by Koppers Company from plaintiff West Kentucky Coal Company. The purpose for which the boat

was rented by Koppers was to secure steam power for the operation of pumps used by Koppers in degassing and cleaning oil barges. The steam power was secured by the operation of the steam boilers which were a part of plaintiff's pump boat. By agreement of the two companies said plaintiff was to furnish the pump boat to Koppers for an agreed rental, to furnish and pay the persons who were to operate the boilers and to furnish the fuel required to produce the steam. Koppers was to pay said plaintiff for the fuel and for the wages of the operators of the boilers in addition to the rental for the boat. Koppers had neither the right to hire nor discharge the persons so furnished by plaintiff, nor the right to control or direct them other than to request the steam as required in the operation of the pumps. Not only did plaintiff charge Koppers for the wages of said Watson, who was one of the men furnished with the boat, but made the item charged for his wages larger than the wages actually paid him for his labor. A profit was made by plaintiff in furnishing its employee Watson to Koppers. Under all those circumstances Watson was and at all times remained the employee of plaintiff.

The evidence shows that a short time before the explosions in the hold of the oil barge which caused his death Watson had relieved the night fireman of the boilers on the pump boat and had taken over the task. He was heard to remark, in effect, that the work on the pump boat was in good order. He left the pump boat, crossed over the degassing flat, which was a third boat used in the operation, and immediately before the explosions was seen going on to the barge which was being degassed. There is evidence that deceased had not been told to keep off the barge where the employees of Koppers were cleaning and degassing the barge by use of the steam power generated on the pump boat and that he had been back and forth from the pump boat to the barge several times during his brief employment on the pump boat. The evidence further shows that the other fireman of the boilers, during the time he had been on duty, had been back and forth from the pump boat to the barge and had not been told to keep off the barge. The evidence does not disclose the purpose of the deceased in leaving the pump boat and going upon the barge at the time in question. That he was interested in the progress of the work for the accomplishment of which he was oper-

ating the boilers on the pump boat and that he was on the barge pursuant to that interest is a reasonable inference of fact. The boats and the barge were tied together as a working unit. In this situation a question of fact was undoubtedly presented by the evidence as to whether or not his injuries arose out of and in course of his employment and this question was for determination by the deputy commissioner. If I were required to pass on the point, I would be of opinion that his decision was correct.

Counsel for defendant K. G. McManigal, deputy commissioner, will prepare and present, upon notice, formal findings, conclusions and decree.