Salvatore **MARTORANO**, Plaintiff,

v.

Thomas F. **HUGHES**, Deputy Commissioner, Second Compensation District, Defendant.

No. 62-C-1063.

United States District Court
E. D. New York.

May 16, 1963.

On Rehearing Oct. 30, 1963.

Allinson & Gerzof, Freeport, N. Y., for plaintiff.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for defendant; Louis E. Greco, New York City, of counsel.

ROSLING, District Judge.

■ Motion by defendant, the Deputy Commissioner, Second Compensation District (Commissioner), for summary judgment pursuant to Rule * 56 is denied. Such determination is bottomed solely on the premise that Crowell v. Benson,[1] the continuing authority of which is subject to serious question, is controlling. The court is accordingly, for the reasons hereinafter noted, of the opinion that an immediate appeal from the order of denial to be entered herein (not otherwise appealable) may materially advance the ultimate termination of the litigation and hereby makes certification, pursuant to 28 U.S.C. § 1292(b) to the Court of Appeals for its appropriate action, of the controlling question of law here involved, namely, whether the District Court in an action of the nature here brought must base its determination of the contested issue of employment upon the record returned by the Commissioner, or is required to try that issue de novo, and if so required, whether the remaining issues adjudicated by the Commissioner are similarly to be tried or are instead to be reviewed upon his record.

The complaint seeks in effect to review and set aside a compensation order filed by the Commissioner pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act (the Act).[2] The order adjudges that plaintiff Salvatore Martorano was at all relevant times the employer of Richard Wipperman (the deceased) and makes award against the plaintiff to the widow and minor children of the deceased for his death resulting from accidental injury.[3] The employer had failed to secure the payment of compensation and was in consequence personally liable for the amounts payable.[4]

Plaintiff by this action challenges the Commissioner's determination as not in accordance with law because, his averments run, the deceased was not an employee at the time he received his fatal injury.

The Commissioner's findings of fact [5] touching deceased's employment are supported by substantial evidence and would, were it not for Crowell, be upheld by this court under the rule generally governing review of determinations made by administrative agencies, and specifically by the Commissioner.[6]

* Rules of Civil Procedure are thus cited herein.

1. 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

2. of March 4, 1927, 44 Stat. 1424, 33 U.S.C. § 901 et seq.

3. The "Wherefore" clause, more specifically, "prays that an injunction be granted restraining the defendant from enforcing such order dated August 31, 1962, and directing that such order and award be vacated and that the compensation claims heretofore filed by (the widow) be dismissed." The review procedure is prescribed by 33 U.S.C. § 921(b).

4. Act, §§ 904, 932, 938.

5. In summary these are: On March 2, 1961 deceased was in the employ of plaintiff as a skin diver engaged in attempts to salvage a partially sunken dredge lying awash in the Great South Bay. While deceased was working under water in a flooded compartment his air supply became exhausted, causing his death by asphyxiation. The sunken dredge had been purchased by Martorano in December, 1960. His profit depended on its successful salvage. Operations looking toward that end were begun in January, 1961. The activities in which deceased was engaged at the time of his fatal mishap were, as was the entire program of the operation, directed by Martorano. Decedent was paid weekly wages not in excess of $50.

6. The Commissioner's findings of fact are not to be set aside if supported by substantial evidence. John W. McGrath Corporation v. Hughes, 289 F.2d 403, 405 (2d Cir. 1961); John W. McGrath Corporation v. Hughes, 264 F.2d 314, 316 (2d Cir. 1959) cert. denied 360 U.S. 931, 79 S.Ct. 1451, 3 L.Ed.2d 1545; Pittston Stevedoring Corp. v. Willard, 190 F.2d 267 (2d Cir. 1951).

Urging the continuing force of the special rule [7] enunciated in Crowell, plaintiff maintains that he is entitled to a trial de novo in this court of the issue of employment. This, if sanctioned, would, in light of the more stringent standards of acceptable proof applying in the District Court, probably be decisive in undermining the finding thus challenged. In the proceeding under review the Commissioner was not "bound by common law or statutory rules of evidence * * *" and was authorized to "make such investigation or inquiry or conduct such hearing in such manner as to best ascertain the rights of the parties." [8] It was plaintiff's contention, implied rather than directly advanced, that deceased, an amateur practitioner of his art, had solicited the arduous and peril-

ous task upon a voluntary arrangement entered upon with plaintiff whereby the services were to be rendered gratuitously, except for the opportunity afforded deceased for practice. The activity, however, represented to the plaintiff work essential in his salvage operation. That the relationship between Martorano and decedent was more probably the conventional one of employer and employee found by the Commissioner is substantiated not alone by circumstances which, when considered alone, appear inconclusive, and by reasonable inferences deducible therefrom, hence of no greater probative value, but by a plausible and consistent hearsay as well of which deceased was the primary source. The evidence thereof was furnished by others.[9] Within acceptable limitations hear-

7. Crowell holds flatly in the majority opinion written by Chief Justice Hughes (285 U.S. at page 64, 52 S.Ct. at page 297, 76 L.Ed. 598) that "the Federal court should determine such an issue [of employment] upon its own record and the facts elicited before it." Gilmore and Black in their excellent text, "The Law of Admiralty" (1957), though denominating (p. 340) Crowell as "a case * * * ill starred in the field of administrative law" in enunciating the principle for which it is cited, acknowledge (p. 341) that "The Court has never overruled the case itself. Thus, until the Supreme Court says No, Crowell v. Benson is still good law with respect to judicial review of orders, of deputy commissioners under the Longshoremen's Act * * * [in respect of] the employment relationship." In 4 Administrative Law Treatise 156 (Davis—1958) the author, on the basis of his poll of lower court decisions, ventures the opinion that Crowell "one of the celebrated cases in the development of administrative law" is in its sponsorship of this "doctrine * * * probably no longer the law." Cf. O'Leary v. Dielschneider, 204 F.2d 810, 812 (9th Cir. 1953); Western Boat Bldg. Co. v. O'Leary, 198 F.2d 409, 412–413 (9th Cir. 1952); Pittsburgh S.S. Co. v. Brown, 171 F.2d 175, 177–178 (7th Cir. 1948); Tyler v. Lowe, 138 F.2d 867, 868 (2d Cir. 1943); South Chicago Coal & Dock Co. v. Bassett, 104 F.2d 522, 523 (7th Cir. 1939); Luckenbach S.S. Co., Inc. v. Lowe, 96 F.Supp. 918 (E.D.Pa.1951); Moran v. Lowe, 52 F.

Supp. 39 (D.N.J.1943); Ford v. Parker, 52 F.Supp. 98, 99 (D.Md.1943); West Kentucky Coal Co. v. McManigal, 51 F. Supp. 781, 782 (E.D.Ill.1943); Tucker v. Norton, 49 F.Supp. 483, 484 (E.D.Pa. 1943).

Notwithstanding the attritive exegesis of the Crowell rule by lesser tribunals upon subsequent consideration, equity demands that if either of the litigating parties is to be cast in the role of appellant the choice more properly should devolve upon the one who essays to deny the continuing vigor of a juridical tenet of such provenance and dimension before its august progenitors have decently performed the obsequies.

8. Act § 923.

9. The widow testified that her husband, a milkman, had worked at his trade until November of 1960, and thereafter for the United Parcel Service to about January 1961. With the cessation of such employment he had been collecting unemployment insurance of $50 a week. When the opportunity to work for Martorano presented itself at the end of December 1960 decedent availed himself of it. The widow testified, manifestly without the direct knowledge of a witness, to the circumstances of the employment. Her spouse had worked almost every day on the salvage job, commencing at the end of December 1960. For his services he received from Martorano a weekly wage of $50 paid in cash. To her her husband paid a like sum, also in cash, the last such payment having been made

say was admissible and may well have constituted the decisional make-weight upon the compensation hearing.[10] Inadmissible, however, upon a common law trial of the issue, if one is had de novo, the deficiency could serve to defeat the widow's claim.

Settle order on notice.

## UPON APPLICATION FOR REHEARING

■ Motion by defendant for rehearing granted, and upon reargument being had, original determination denying defendant's motion for summary judgment is adhered to. The commissioner has chosen not to avail himself of the permission granted by this court to apply to the

Court of Appeals for an interlocutory review[1] of the denial of his original motion for judgment. He has, instead, here submitted a brief, copiously annotated, which demonstrates that the principle of Crowell v. Benson is still under attack, a circumstance already noted in the foregoing memorandum[2] and which had prompted this court to incorporate therein the certification for such interim appellate procedure. The court, nevertheless, continues unpersuaded that Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 lies hopelessly moribund; nor does it agree that justice is more likely to be achieved were a district court judge to disregard a major declaration of constitutional law by the Supreme

the week before his death which occurred on March 2, 1961.

Michael Giannattasio, a patrolman employed by the New York City Police Department, testified to the circumstances of the accident. It had happened while he himself was working underwater with deceased. Giannattasio testified that he too was a skin diving enthusiast and had been induced by deceased to join in the exploit, with the adventure as his only wage. He was to receive no other compensation. Decedent, on the other hand, (so he was told) "was going to get a salary" from his employer Martorano. On two occasions Giannattasio had at the others request driven him to Martorano's house to get his salary and had seen decedent coming from another section of the house counting money which he purportedly had just obtained from his "employer."

Martorano for his part produced his records for their hopefully corroborative effect based upon the absence of any entries therein consistent with deceased's alleged employment. As additionally persuasive he cited the circumstance that Giannattasio admittedly rendered comparable services gratuitously.

A possible explanation may be found in the special situation of each person involved. It is understandable that a police officer in the City's service would not wish by acceptance of compensation from an outside source to expose himself to a departmental charge of moonlighting. Decedent's receipt of unemployment benefits while gainfully employed might in his case well account for a reluctance to publicize a fraudulent involvement. See Labor Law * McKinney's Consol.Laws, c.

31, § 632; People v. Licausi, 23 Misc.2d 75, 200 N.Y.S.2d 582 (1960); People ex rel. De Gran v. McDonnell, 200 Misc. 871, 107 N.Y.S.2d 275 (1951). Moreover, the meagerness of the wage for so hazardous and toilsome a labor suggests a financial concession by decedent to the employer in return for a consistent omission to enter earnings in the payroll book in a context not currently unique. For his part, the employer, uninsured as to his employees, with commensurate saving of premiums, but thereby exposed to the penalties stipulated in 33 U.S.C. § 938, had his own sufficient reasons for concurrence in a policy of nonrecordation.

* New York State.

10. Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); National Labor Relations Bd. v. Imparato Stevedoring Co., 250 F.2d 297, 302–303 (3d Cir. 1957); Willapoint Oysters v. Ewing, 174 F.2d 676, 690–691 (9th Cir. 1949), cert. denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949).

1. Authorized under 28 U.S.C. 1292(b).

2. Apt in its analogy is the ancient jest of the patient who, suffering with spots before his eyes, consulted an oculist for his ailment. "You need glasses," the physician advised, handing him a prescription. "Wear them for a week and then come back, so I can see how you do with them." A week later, as directed, the patient returned. "Well," the doctor inquired hopefully, "Have the glasses helped any?" "They sure have!" the other replied cheerily, "I can now see the spots much more clearly."

Court of the United States. That declaration was greeted some thirty years ago almost immediately upon its promulgation with a chorus of clucking disapproval in law review critiques and thereafter in commentation by text writers.[3]

3. In Pittsburgh S.S. Co. v. Brown, 171 F.2d 175 (7th Cir. 1948), the Court of Appeals although reversing on other grounds, affirmed the district judge's procedure in (D.C. 81 F.Supp. 284) "allow[ing] plaintiff's motion [in an action by an employer similar to the one sub jud.] for a trial de novo of the single issue as to whether the deceased lost his life as the result of an accidental injury" occurring on a navigable waterway. The lower court had refused to consider the transcript of testimony taken before the commissioner relative to such issue. So clear in its exposition is the Court of Appeals' opinion in Pittsburgh S.S. in its rejection of contentions paralleling those advanced by the defendant here upon his application for rehearing that a rather extensive excerpt is set out in the following. The Court of Appeals writes:

"The rulings of the District Court are based almost entirely upon the decision of the Supreme Court in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, which leaves no room for argument but that plaintiff was entitled to a trial de novo on the issue as to whether the injury occurred upon the navigable waters of the United States. This is tacitly conceded by defendants, but it is argued that the holding in that case no longer retains vitality in view of later decisions of the Supreme Court. A good portion of the briefs in the instant case are devoted to an analysis, discussion and interpretation of the opinion in the Crowell case; in fact, the argument before this court makes it appear that the contested issue is the holding of the Supreme Court in that case. The opinion in the Crowell case is lengthy and certainly no good purpose could be served in reviewing or quoting its language in detail. Its basic doctrine is well stated by plaintiff in its brief as follows:

"First: That two constitutional jurisdictional facts are involved, viz.:

"(1) Master and servant relationship;

"(2) Occurrence on navigable waters.

"When either or both of said fundamental issues are involved, the losing party before the Administrative Board (the Deputy Commissioner) is entitled to a trial de novo before the District Court.

"Second: As to statutory jurisdictional issues of fact:

"All remaining questions in applying the Longshoremen's Act such as:

"(1) Whether injury arose out of and in course of employment;

"(2) Nature of injuries;

"(3) Extent of injuries;

"(4) Consequences of injuries;

"(5) Amount of compensation;

"(6) Relationship to deceased, etc.

"When any of such issues are involved, the losing party before the Deputy Commissioner is only entitled to have the record before the Deputy Commissioner reviewed by the District Court; whereupon the District Court may not weigh the evidence, but can only determine whether there was substantial evidence before the Deputy Commissioner to support his finding or findings. If so, the District Court must affirm.

"In an effort to persuade us that this decision should not be followed, numerous law review articles and text book authorities are cited which have criticized the opinion. We need not go so far afield, however, to find criticism of the opinion because it was severely criticized at the time it was rendered in a dissenting opinion joined in by three members of the court. In our view, this criticism furnishes no justification for a refusal either on the part of this court or the lower court to follow it. Numerous cases are cited in support of the contention that the Crowell case no longer retains its vitality, the most important of which are Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, and Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 67 S.Ct. 801 [91 L.Ed. 1028]. A study of these cases, however, makes it plain that neither of the constitutional jurisdictional questions which the court considered in the Crowell case was involved. None of the cases relied upon by the defendants in this respect, including the two just referred to, furnish any substantial basis for the contention that the Crowell case is no longer binding upon inferior federal courts.

"On the other hand, the Crowell case has been cited by the Supreme Court with approval. Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 184, 59 S.Ct. 160, 83 L.Ed. 111; Baltimore & O. R. Co., et al. v. United States, et al., 298 U.S. 349, 368, 56 S.Ct. 797, 80 L.Ed. 1209; Borax, Consolidated Ltd. v. Los Angeles, 296 U.S. 10, 18, 56 S.Ct. 23, 80 L.Ed. 9. And it has been frequently followed by lower courts, including this court in South Chicago Coal & Dock Co. v. Bassett, 7 Cir., 104 F.2d 522, 523–525, which was affirmed by the Supreme Court, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732.

Additionally, certain, but not all, of the lesser appellate tribunals have as occasion presented itself distinguished by gloss and attentuated by construction [4] the effect of what the highest court had enunciated as a necessary limitation upon the statute if the residue were to survive the challenge of constitutional infringement. That court did not, however, at any time thereafter recall its holding in later pertinent contexts when it might well have done so had it been so minded.[5] It is a fair inference that such

See also Bassett, Deputy Commissioner v. Massman Const. Co., 8 Cir., 120 F.2d 230, 233; Wood Towing Co. v. Parker, 4 Cir., 76 F.2d 770, 772.

"In our view, it is hardly open to question but that the court below correctly held that plaintiff was entitled to a trial de novo on the issue presented by its complaint for injunction, and such a trial contemplates what the term implies, a trial anew of the entire controversy, including the hearing of evidence, as though no previous action had been taken. Spano v. Western Fruit Growers, Inc., 10 Cir., 83 F.2d 150, 152; Bley v. Luebeck, 377 Ill. 50, 35 N.E.2d 334, 339; Fowler v. Young, Court of Appeals of Ohio, 77 Ohio App. 20, 65 N.E.2d 399. In the last cited case the court on page 406 of 65 N.E.2d, stated:

" 'A trial de novo connotes an examination of testimony and an independent finding made as fully as though the action was originally instituted in that court, in which event it would be immaterial what errors were committed in the hearing before the board. Also it would be immaterial what the findings of the board were.'

"Thus, we have no difficulty in concluding that the court properly refused to receive the transcript of testimony taken before the Deputy Commissioner on the particular issue involved. In fact, the court's opinion in the Crowell case strongly supports such a conclusion. The court on page 64 of 285 U.S., page 297 of 52 S.Ct. stated:

" 'We think that the essential independence of the exercise of the judicial power of the United States in the enforcement of constitutional rights requires that the federal court should determine such an issue upon its own record and the facts elicited before it.' "

4. V. Morrison-Knudsen Company v. O'Leary, 288 F.2d 542 (9th Cir. 1961), cert. denied, 368 U.S. 817, 82 S.Ct. 33, 7 L.Ed.2d 24; O'Leary v. Dielschneider, 204 F.2d 810 (9th Cir. 1953); Western Boat Building Co. v. O'Leary, 198 F.2d 409 (9th Cir. 1952).

5. Cf. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940), wherein the Supreme Court affirmed a Seventh Circuit holding (104 F.2d 522), which had reversed a district court determination, enjoining enforcement of a Deputy Commissioner's award based upon his finding that a deceased employe was a covered longshoreman and not an excluded member of a crew. (Section 3 Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 903). The district court had made the factual determination, thus reversed, on its own assessment of the weight of the evidence adduced before the commissioner. The opinion of the Supreme Court, authored as in Crowell v. Benson, eight years earlier, by Chief Justice Hughes, in its legal peroration, preliminary to an examination of the substantiality of the evidence considered by the commissioner, declared that insofar as the determination of the issue noted above was based upon fact questions, the finding of the deputy commissioner, if supported by the evidence, was conclusive. In its opening portion the opinion explains its grant of certiorari as resting upon the considerations noted in the following:

"The Court of Appeals found that the evidence before the District Court was similar to that heard by the deputy commissioner; that the facts were not in dispute; that the District Court in reviewing the finding of the deputy commissioner was precluded from weighing the evidence, being required to examine the record and ascertain whether there was any evidence to support the commissioner's finding. Holding that there was such evidence, the Court of Appeals reversed the decree of the District Court and directed the dismissal of the bill of complaint. [7 Cir.] 104 F.2d 522. Because of an alleged conflict with a decision of the Court of Appeals of the Fifth Circuit in the case of Maryland Casualty Co. v. Lawson, 94 F.2d 190, we granted certiorari, 308 U.S. 532, [60 S.Ct. 107, 84 L.Ed. 448, October 9, 1939]."

Yet nowhere in his opinion does the distinguished Chief Justice, writing for the

silence bespeaks a purpose to maintain a constitutional enclave, with boundaries suggested but not absolutely delineated, in which the courts are required to conduct de novo trials with common-law standards governing the admissibility of evidence, reserving for the commissioner's authority the adjudication of factual issues upon less formal proof. Excluded from such adjudicative competence would be matters wherein liminal questions touching the commissioner's jurisdiction to act at all were substantially present, the resolution of which was prerequisite to his assumption to act.

In the instant proceedings it may be noted that the employer-employee relationship alleged by claimant without which the commissioner's fact finding function has nothing to operate upon, is not only sharply challenged by the plaintiff, but that even if established, it would fall well without any routine category of employment.

Settle order on notice.

Supreme Court, so much as cite Crowell v. Benson, let alone record its obituary. The reason for such indifference is plain. Examination of the Court of Appeals' opinions in the two cases, the conflict in which Justice Hughes proposes to review, discloses that their divergence does not subsist in the rejection by one of the circuit courts of the principle which recognizes the constitutional necessity for de novo hearings in the district courts in cases involving fundamental or jurisdictional issues. As to that, the lower appellate tribunals both are in accord in their reaffirmation of the de novo rule. (South Chicago Coal & Dock Co. v. Bassett, 104 F.2d at p. 523; Maryland Casualty Co. v. Lawson, 94 F.2d at p. 192.) It is rather in the practical taxonomy of one indisputably an employee, but whose status as a longshoreman or a member of a crew is at issue, that the views of the coordinate appellate courts clash.

See also: Tyler v. Lowe, 138 F.2d 867 (2d Cir. 1943).

Nor does defendant's passing reference to the post Crowell-Benson enactment in 1946 of the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., and the failure of the Supreme Court in its later

decisions directly to reaffirm the doctrine buttress his thesis of an unannounced demise of Crowell-Benson by implication through legislative inconsistency. One would not expect to find Congress by statute purporting to encroach upon an area of judicial authority which the Supreme Court had earlier marked off as constitutionally inviolate. Nor does analysis of the Administrative Procedure Act disclose any such unpublicized legislative intent at this late hour which would have the effect of challenging by frontal assault the prestigious rule of Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60. It comes as no surprise, therefore, to note that subdivision (e) of Section 1009 of the Act mentioned, in its delimitation of the scope of judicial review of administrative determinations, provides that the courts are required to "hold unlawful and set aside agency action, findings, and conclusions found to be * * * (6) unwarranted by the facts *to the extent that the facts are subject to trial de novo by the reviewing court.*" [emphasis supplied] In this declaration the legislative finger points unmistakably to Crowell-Benson as the source of the recognition of such reserved judicial power.